The LIBERTARIAN PARTY
OF OREGON et al,
*Appellants,*

*v.*

ROBERTS et al,
*Respondents.*

(151821; CA A40378)

737 P2d 137

Carol E. Jones, Portland, argued the cause and filed the brief for appellants.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs, Libertarian Party of Oregon and individuals seeking to run as Libertarian candidates or to vote for Libertarian candidates, brought this declaratory judgment action, contending, *inter alia,* that ORS 248.008 and ORS 249.732[1] violate (1) the First Amendment, (2) various provisions of the Oregon Constitution pertaining to political, expression and association rights and (3) the right to equal privileges and immunities assured by Article I, section 20, of the state constitution. Plaintiffs appeal from the trial court's judgment for defendants. We affirm.

Political groups which qualify as minor political parties under ORS 248.008 and ORS 249.732 are entitled to nominate candidates for offices in the district or districts in which they are qualified and to have their nominees' names placed on the general election ballot. ORS 249.705 *et seq.* Plaintiffs' principal argument is that the five percent requirement for

---

[1] ORS 248.008 provides:

"An affiliation of electors becomes a minor political party when either of the following events occur:

"(1) When the affiliation of electors has filed with the Secretary of State a petition with the signatures of at least a number of electors equal to five percent of the vote cast in the electoral district for which the nomination is made for all candidates for Representative in Congress at the last general election. The petition also shall state the intention to form a new political party and give the designation of it. The signatures on the petition shall be certified for genuineness by the county clerk under ORS 249.008. Before circulating the petition, the chief sponsor of the petition shall file with the Secretary of State a signed copy of the prospective petition. The chief sponsor shall include with the prospective petition a statement declaring whether one or more persons will be paid money or other valuable consideration for obtaining signatures of electors on the petition. After the prospective petition is filed, the chief sponsor shall notify the filing officer not later than the 10th day after the chief sponsor first has knowledge or should have had knowledge that:

"(a) Any person is being paid for obtaining signatures, when the statement included with the prospective petition declared that no such person would be paid.

"(b) No person is being paid for obtaining signatures, when the statement included with the prospective petition declared that one or more such persons would be paid.

"(2) When the affiliation of electors has polled for any one of its candidates for any public office in the state, county or other electoral district for which the nomination is made, at the last general election, at least five percent of the entire vote cast for Representative in Congress in the electoral district."

ORS 249.732 is worded identically.

petitions under both of the challenged statutes sets an unduly high threshold for placement on the ballot. Therefore, according to plaintiffs, the requirement runs afoul of the criteria that the United States Supreme Court and other courts have established for ballot qualification under the First Amendment and also violates corresponding provisions of the Oregon Constitution.[2]

■     The Oregon constitutional question is, for practical purposes, one of first impression. *See* note 2, *supra.* There is abundant authority dealing with First Amendment questions similar to the one presented here. The United States Supreme Court summarized the analytical process under the First Amendment in *Munro v. Socialist Workers Party,* 479 US ___, 107 S Ct 533, 93 L Ed 2d 499 (1986):

> "Restrictions upon the access of political parties to the ballot impinge upon the rights of individuals to associate for political purposes, as well as the rights of qualified voters to cast their votes effectively, *Williams v. Rhodes,* 393 US 23, 30, [89 S Ct 5, 21 L Ed 2d 24 (1968)] * * * and may not survive scrutiny under the First and Fourteenth Amendments. * * *
>
> "* * * [I]t is now clear that States may condition access to the general election ballot by a minor-party or independent candidate upon a showing of a modicum of support among the potential voters for the office. * * * The Court's opinion [in *Jenness v. Fortson,* 403 US 431, 91 S Ct 1970, 29 L Ed 2d 554

---

[2] Defendants argue that plaintiffs are collaterally estopped to raise the federal question, because it was decided adversely to them by the United States District Court in *The Libertarian Party of Oregon v. Paulus,* Civil No. 82-521FR (D Or 1982). Plaintiffs answer that the question of whether the five percent requirement is facially unconstitutional was not at issue in that case and that the district court's discussion of the issue was dictum. We do not consider it necessary to resolve the estoppel question. As we will discuss, the analysis in the federal cases is dispositive on the federal constitutional question and is germane to plaintiffs' state constitutional challenge, which is clearly not foreclosed by the federal court decision. Because we reach the same conclusion on the First Amendment issue as did the District Court, it is academic whether collateral estoppel would prevent us from deciding the issue differently. Defendants have fully addressed the merits and are not prejudiced by our resolving the merits.

Defendants also maintain, somewhat halfheartedly, that we have already decided the constitutional issues in *Friedman v. Paulus,* 70 Or App 612, 615, 689 P2d 1330 (1984), *rev den* 298 Or 773 (1985), where we cursorily, and without particularity, rejected the respondents' arguments pertaining to the constitutionality of ORS 249.732(2). Without commenting on the correctness of defendants' understanding of *Friedman,* we agree with defendants that there is no reason why plaintiffs cannot ask us to consider the issues again.

(1971),] observed that '[t]here is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election.' *Id.*, at 442. * * *" 479 US at ___ (93 L Ed 2d at 504-05).

The initial difficulty that plaintiffs' First Amendment argument encounters is that, in *Jenness v. Fortson,* 403 US 431, 91 S Ct 1970, 29 L Ed 2d 554 (1971), the Supreme Court upheld a Georgia statute which set a five percent petition requirement for independent or minor party candidates to qualify for the general election ballot.[3] The Court said, with respect to the required percentage:

"The 5% figure is, to be sure, apparently somewhat higher than the percentage of support required to be shown in many States as a condition for ballot position, but this is balanced by the fact that Georgia has imposed no arbitrary restrictions whatever upon the eligibility of any registered voter to sign as many nominating petitions as he wishes. Georgia in this case has insulated not a single potential voter from the appeal of new political voices within its borders." 403 US at 442. (Footnote omitted.)

The five percent requirement under the Georgia provision was calculated on the number of votes cast at the previous general election for the office that the petition candidate was seeking, while the Oregon calculation is based on the number of votes cast for the United States House of Representatives in the district or combination of districts in which the party seeks to place candidates. Plaintiffs suggest no reason, and we conceive of none, why that difference in the base for the calculation affects the constitutional equation. However, plaintiffs argue in their brief that *Jenness* is distinguishable because

"the ruling from whence the 'totality' rule was derived, is distinguishable from this case using that very rule. In that case, a 5 percent petition requirement was upheld (the state legislature loosened the requirement subsequently in spite of

---

[3] The statute referred by its terms to candidates who did not enter and win primary elections. However, the operational effect of the statute fell only on independent candidates, minor parties and minor party candidates, and the Court analyzed the statute accordingly.

that). However, the court considered the scheme to be unburdensome in that it provided for write-in votes, and for independent candidacies. *Id.* at 438, 91 S.Ct. at 1974. It should be recalled, however, that the Ninth Circuit has subsequently ruled that write-ins and independent candidacies are not adequate substitutes for running as a minor party candidate with the party name. *Socialist Workers Party v. Secretary of State,* [765 F2d 1417 (9th Cir 1985), *rev'd sub nom Munro v. Socialist Workers Party, supra.*[4]] A factor in the *Jenness* decision was that the ballot access scheme did not 'operate to freeze the status quo.' *Jenness,* 403 U.S. at 438, 91 S.Ct. at 1974, the court noting that in the past two elections, candidates had gained access to the ballot via nominating petitions! By contrast, in Oregon, no statewide party petitions have succeeded in any of the last three elections.[5] Oregon was one of only four states in 1984 in which Reagan and Mondale were the only candidates on the Presidential ballot."

Plaintiffs' distinctions do not succeed. Oregon's statutes pertaining to ballot access are no more restrictive than the Georgia statutes considered in *Jenness.* Indeed, the alternative to the petition approach for obtaining ballot status—votes at the previous election—required 20 percent support under the Georgia statutes, but five percent suffices under the Oregon provisions. *See* 403 US at 439. In any event, we do not read the language in *Jenness* on which plaintiffs rely to make the probability of a position on the ballot the critical factor in determining whether a statutory scheme freezes the political status quo. The discussion at 403 US 438 was aimed at distinguishing the Georgia statutes from the Ohio statutes, which had been held unconstitutional in *Williams v. Rhodes,* 393 US 23, 89 S Ct 5, 21 L Ed 2d 24 (1968). The court's emphasis in *Jenness* was on the ability that the statutes left small political groups to associate, to express themselves and to *pursue* recognition, rather than to *achieve* it:

"So far as the Georgia election laws are concerned, independent candidates and members of small or newly formed political organizations are wholly free to associate, to proselytize, to speak, to write, and to organize campaigns for any school of thought they wish. They may confine themselves to an appeal

---

[4] The Supreme Court reversed the Ninth Circuit's decision after plaintiffs made that argument.

[5] Libertarian Party candidates qualified for the statewide general election ballot in the 1980 election.

for write-in votes. Or they may seek, over a six months' period, the signatures of 5% of the eligible electorate for the office in question. If they choose the latter course, the way is open. For Georgia imposes no suffocating restrictions whatever upon the free circulation of nominating petitions. A voter may sign a petition even though he has signed others, and a voter who has signed the petition of a nonparty candidate is free thereafter to participate in a party primary. The signer of a petition is not required to state that he intends to vote for that candidate at the election. A person who has previously voted in a party primary is fully eligible to sign a petition, and so, on the other hand, is a person who was not even registered at the time of the previous election. No signature on a nominating petition need be notarized." 403 US at 438-39. (Footnotes omitted.)

It is true, as plaintiffs state, that the court also observed in *Jenness:*

"The open quality of the Georgia system is far from merely theoretical. For the stipulation of facts in this record informs us that a candidate for Governor in 1966 and a candidate for President in 1968, gained ballot designation by nominating petitions, and each went on to win a plurality of the votes cast at the general election." 403 US at 439. (Footnotes omitted.)

However, if that observation was meant as more than an aside, it loses all force in the light of *Munro v. Socialist Workers Party, supra,* where the Court expressly eschewed empirical tests of minor party ballot attainment as a constitutional criterion, either in the form of a before-the-fact showing of "voter confusion, ballot overcrowding or the presence of frivolous candidacies," 479 US at ___ (93 L Ed 2d at 506), or an after-the-fact demonstration of the success of minor candidates or associations at gaining ballot placement. The Court explained in *Munro:*

"To be sure, candidates must demonstrate, through their ability to secure votes at the primary election, that they enjoy a modicum of community support in order to advance to the general election. But requiring candidates to demonstrate such support is precisely what we have held States are permitted to do.

"* * * States are not burdened with a constitutional imperative to reduce voter apathy or to 'handicap' an unpopular candidate to increase the likelihood that the candidate will

gain access to the general election ballot. * * *" 479 US at ____ (93 L Ed 2d at 507-08).

Stated summarily, the empirical fact that few minor party candidates or parties have satisfied the statutory restrictions on ballot placement, *in itself,* demonstrates nothing more than that the parties and candidates have not generated a modicum of support and that the restrictions have succeeded in promoting the compelling state interest which makes them permissible. If it were relevant to our inquiry to do so, we would also conclude that the two successful petitions in Georgia in two elections and the one successful petition in four Oregon elections can be more readily attributable to coincidence than to a constitutionally cognizable difference in the statutory schemes of the states. At least without a statistical framework beyond the raw number of *successful* petitions, the numerical difference tells us nothing about the quantity or quality of petition efforts that were aborted or otherwise failed.

We also find no merit in plaintiffs' distinction based on the "totality" of the statutory effect. The complement of associative and expressive rights, rights to pursue ballot access, liberal eligibility for petition signers and alternatives such as write-in candidacies under the Oregon statutes do not differ in substantial respects from that of the Georgia scheme which the Court described in *Jenness v. Fortson, supra.*[6]

Plaintiffs also argue:

"The United States Supreme Court has expressed the view that a petition requirement of only 1 percent of the last vote for governor is within the outer boundaries of what the states should require for minor party ballot access. * * *

"* * * * *

"* * * The Supreme Court has also designated *1 percent of the vote for governor* as being 'within the outer boundaries of support the State may require before according political parties ballot position.' *American Party of Texas v. White,* [415 US 767, 783, 94 S Ct 1296, 39 L Ed 2d 744 (1974)]." (Emphasis plaintiffs'.)

---

[6] We do not specifically address the points in plaintiffs' arguments based on the Ninth Circuit's decision in *Socialist Workers Party v. Secretary of State,* 765 F2d 1417 (9th Cir 1985), in view of the Supreme Court's reversal of that decision in *Munro.*

The Court's statement in *White* lends far less solace to plaintiffs than they would derive from it. The Court said:

> "The District Court recognized that any fixed percentage requirement is necessarily arbitrary, but we agree with it that the required measure of support—1% of the vote for governor at the last election and in this instance 22,000 signatures—falls within the outer boundaries of support the State may require before according political parties ballot position.[15] * * *

---

"[15]. The District Court balanced this *lenient* 1% petition requirement against what it thought was a somewhat burdensome requirement of precinct, county, and state conventions and concluded that, as a whole, the system was valid. * * *" 415 US at 783. (Emphasis supplied.)

Leaving aside the other aspects of the Court's language which are of no benefit to plaintiffs, the words "*within* the outer boundaries" (emphasis supplied) do not, in their context, suggest where the outer boundaries may be. *Jenness holds* that five percent is as well within those boundaries as one percent.

■ ORS 248.008 and ORS 249.732 do not violate the First Amendment as plaintiffs contend. We turn to their Oregon constitutional arguments. The state constitutional provisions and language that plaintiffs cite are Article I, section 1 ("[T]he people * * * have at all times a right to alter, reform, or abolish the government in such manner as they may think proper"); Article I, section 3 ("No law shall in any case whatever * * * interfere with the rights of conscience"); Article I, section 8 (freedom of expression); Article I, section 26 ("No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good"); Article II, section 1 ("All elections shall be free and equal"); and Article II, section 8 ("The Legislative Assembly shall enact laws to support the privilege of free suffrage, prescribing the manner of regulating, and conducting elections, and prohibiting under adequate penalties, all undue influence therein, from power, bribery, tumult, and other improper conduct").

Although plaintiffs suggest abstractly that the Oregon provisions should be subjected to a more liberal analysis than the one employed in the United States Supreme

Court's decisions, they do not say why that should be so or what alternative analytical approach should be followed. We find nothing in the provisions that plaintiffs cite or elsewhere in the state constitution which appears to have peculiar bearing on the access of minor political groups to the ballot or which suggests that the analysis in the First Amendment cases is not equally appropriate in connection with the Oregon Constitution.

■  Plaintiffs also argue that the statutory scheme denies them equal privileges and immunities under Article I, section 20, of the Oregon Constitution, because, in contrast to the five percent petition requirement for minor parties to attain placement on the ballot for statewide offices or the federal House of Representatives, ORS 249.740(1)(a) allows ballot status to candidates who are not party nominees upon the petition of a number of electors equal to three percent of the votes cast for presidential electors in the preceding election in the state or the congressional district.[7] We do not agree that there is an unconstitutional disparity. Once a minor political party satisfies the five percent petition requirement throughout the state, it has the same nominating and ballot access rights and capabilities as the major parties, except that it nominates its candidates through the procedures outlined in ORS 249.705 to 249.722 rather than through primary elections. It becomes privileged by dint of its status as a statewide minor party to nominate candidates for all statewide offices. ORS 249.740(1)(a) addresses the very different matter of the necessary manifestation of support for a particular unaligned candidate for a particular statewide office to be present on the ballot. Moreover, there is nothing to prevent plaintiffs from availing themselves of ORS 249.740(1)(a), if the Libertarian Party were to be unable to qualify as a minor party. Plaintiffs make an apples and oranges comparison which necessitates no equal protection or equal privileges and immunities analysis. The trial court correctly ruled for defendants.

Affirmed.

---

[7] ORS 249.740(1)(b) establishes a five percent petition requirement for unaligned candidates running for offices other than those enumerated in subsection (1)(a).